**NACOGDOCHES INDEPENDENT SCHOOL DIST. v. ADAMS.**

No. 2070.

Court of Civil Appeals of Texas. Beaumont.
Dec. 18, 1931.

Rehearing Denied March 18, 1931.

Hodges & Greve, of Nacogdoches, for appellant.

Adams & McAlister, of Nacogdoches, for appellee.

WALKER, J.

The campus of the city schools of the city of Nacogdoches is a rectangle about 900 feet by 1,200 feet. On or about September, 1930, over the protest of appellee and many of the other property owners of the city of Nacogdoches, the board of trustees of the city schools contracted with Cyclone Fence Company to build a wire fence, mesh 1 or 1½ inches, 6 feet high, around the campus, with arms extending from the tops of the posts upon which barbed wire was to be stretched. The contract provided for seven openings in the fence as it surrounded the campus. At that time appellee's twelve year old son, and many other children similarly situated, were in attendance on this school and had been for several years and would continue as students of that school. Appellee's homestead was adjacent to the campus of the city schools, separated from it by one of the city streets. This suit was brought by appellee against appellant to enjoin the building of the fence. For grounds of relief he alleged the building of the fence would (a) damage his property; (b) create a dangerous condition for his son and other children similarly situated in entering and leaving the campus of their school; (c) detract from the value of the Old Stone Fort as a historic relic, the allegation being that this old fort was located on the campus and was a matter of curious and historical interest to the citizens of Texas who go to Nacogdoches in large numbers to see the old fort; (d) the expenditure of the school funds for the purpose of building this fence would be an unlawful diversion of the funds.

Appellant answered this petition by general and special demurrers and specially pleaded that the building of the fence was necessary (a) to protect the school property from vandals; (b) to protect the public morals; and (c) to protect the life and limb of the children attending the school. The demurrers were overruled, to which appellant excepted, and the case went to the jury on the two following questions, answered as indicated:

"Special Issue No. 1.

"Do you find from the preponderance of the testimony that the building of the fence, as is now begun, will depreciate the plaintiff's property?

"You will answer this 'Yes' or 'No' as you may find the facts to be."

Answer: "Yes."

"Special Issue No. 2.

"Do you find from the preponderance of the testimony that the building of the fence, as is now begun, will make it more dangerous for the plaintiff's child in attending school?

"You will answer this 'Yes' or 'No' as you may find the facts to be."

Answer: "Yes."

On this verdict judgment was entered perpetually enjoining the building of the fence.

Opinion.

Appellants advance twenty-six assignments of error complaining of the judgment appealed from. However, many of their propositions under these assignments cannot be reviewed for the following reason: Rule 30 governing the preparation of briefs in the Court of Civil Appeals is as follows:

"Following the statement of the case there shall be stated consecutively, separately subdivided and numbered, the propositions or points upon which the appeal is predicated. These shall be germane to one or more of the assignments of error or relate to fundamental error.

"The purpose of this rule is to enable counsel to state immediately and briefly, and without repetition, the questions in the case and to acquaint the court at once with the propositions presented for decision." 230 S. W. p. VII.

Immediately following the statement of the nature and result of the suit, appellants, in their brief, have submitted fourteen propositions, stated consecutively and separately subdivided and numbered, prefacing these propositions with the statement: "Propositions upon which this appeal is predicated." Immediately following these propositions is the statement made by appellants in support thereof, together with their citation of legal authorities and argument. The first twenty-five pages of the brief are devoted to a discussion of these propositions. The remaining propositions are scattered through the brief without being consecutively stated or numbered. There is nothing in the introduction to the case, nor in the statement of the first fourteen propositions, advising the court as to the nature of these additional propositions. It is our conclusion that Rule 30 should be given a mandatory construction. It was promulgated to change briefing rules that had been in force for many years where-

by the propositions were scattered through the brief and were not required to be "stated consecutively, separately subdivided and numbered." The immediate purpose of the rule is stated in the rule itself·in the following language, again quoting from rule 30: "The purpose of this rule is to enable counsel to state immediately and briefly, and without repetition, the questions in the case and to acquaint the court with the propositions presented for decision." Rule 30, in fact, accomplishes that purpose. To read into this rule a discretion on the part of counsel to obey its provisions, or on the part of the Courts of Civil Appeals to disregard its provisions, would absolutely nullify the rule and defeat its express purpose. For this reason we should not consider any of the propositions except the first fourteen.

■ Without quoting these propositions, many of them are too general to invoke the jurisdiction of the court, as appears from three of them which we set out in full:

"A petition for injuries, for injunction, should disclose injury likely to occur to applicant by reason of the proceeding sought to be enjoined."

"Injunction will never be granted unless it appears from the allegations in the petition that injury will otherwise result to the applicant."

"A petition for injunction which fails to allege that plaintiff had no remedy at law or that it was inadequate was fatally defective."

Unquestionably these propositions must be stricken down under the principle reannounced by this court in Clevenger v. Burgess, 31 S.W.(2d) 675. However, the remaining propositions are sufficient to bring forward the following points: (a) The· petition was subject to general demurrer because it appeared on its face that appellee had not appealed to the school authorities for relief against the alleged illegal actions of the trustees building the fence; (b) the petition was subject to general demurrer because it did not appear therefrom that appellee was without an adequate legal remedy; (c) the petition was subject to general demurrer because it appeared from the petition that in law the board of trustees was vested with the legal discretion to manage and control the property intrusted to their care as trustees, and that such discretion could not be reviewed by ·a trial court. The language of the proposition being: "The exercise of this power is judicial, not ministerial, and rests solely with them, and the exercise of this power cannot be inquired into by any legal proceedings."

■ Appellants are in error in saying that appellee was required first "to appeal to the school authorities." The purpose of appellee's suit, as expressed by the petition, was the prevention of an alleged wrong against him by the board of trustees. The question presented is one growing out of the administration of the common law and not of school laws. Barton v. Vickery (Tex. Civ. App.) 189 S. W. 1103, and similar authorities, have no application.

■ We cannot agree with appellants in their construction of the petition on the point that appellee has not pleaded facts entitling him to equitable relief. Under the allegations of his petition the building of the fence under the plans and specifications provided for in the contract between the board of trustees and Cyclone Fence Company created a dangerous condition for his son and children similarly situated in entering and leaving the school campus. In law appellee had no adequate relief against that alleged wrong. Citing Marshall v. City of Dallas (Tex. Civ. App.) 253 S. W. 887, we think appellants have announced a sound legal proposition determining the result of this appeal, ·which is as follows: "The plaintiff must show that the fence complained of will be dangerous to life, or detrimental to· health." Under appellee's petition, the building of the fence complained of, under the plans and specifications called for in the contract, would create a condition dangerous to the life of his son and children similarly situated, and, therefore, unlawful.

■■ Solely upon the proposition that the building of the fence would subject his son and other children similarly situated to additional danger in entering and leaving the campus, we hold the petition was not subject to general demurrer. Beyond question, the trustees of our public schools are vested with discretion in the management, control, and protection of the school property committed to their care, and the courts should not review this discretion except upon a showing of abuse. But our schools are maintained for the education of the youth of the country, and it is the duty of the trustees to exercise their discretion to maintain the school property in a safe condition for the children. For them to create a condition, adding danger to the life and limb of the children, in entering and leaving the school premises, would be an abuse of the discretion vested in them for the orderly discharge of their fiduciary obligations. It is our conclusion that appellee's petition stating this cause of action was not subject to general demurrer.

■ While not assigned, we think it apparent upon the face of the record that appellee was granted relief beyond the terms of his petition. At least the judgment is ambiguous and in the future might mislead the courts and·interested parties as to the extent of the relief in fact granted appellee. Therefore, we reform the judgment appealed from and limit it merely to enjoining appellants

from building the fence under the plans and specifications complained of. In doing this we are expressing no opinion, because it is not before us, of the power and authority of the board of trustees to build a lawful fence around the school campus. From what has been said it follows that the judgment of the lower court should be reformed and affirmed, and it is accordingly so ordered. Reformed and affirmed.

■ Because appellants did not assign error against the form of the judgment nor ask the lower court to make it conform to the pleadings, the costs of this appeal, though the judgment has been reformed, will be taxed against appellants.

### On Rehearing.

Appellants have not assigned error against our construction of Rule No. 30, but insist that the following propositions should be reviewed as presenting fundamental error.

■ First. On the ground that the permanent injunction awarded appellee by the judgment of the lower court has no support in his prayer, appellants say: "The trial court was entirely without jurisdiction to grant the permanent injunction." The prayer was as follows, which fully supports the judgment of the lower court: "Wherefore plaintiff prays for writ of injunction against the defendants, that the defendant, Nacogdoches Independent School District be enjoined and restrained from drawing out the funds as needed to pay for said fence, and that they be prohibited from carrying out said contract as is heretofore alleged, and that the defendant, Cyclone Fence Company, be enjoined from further erecting of said fence around said campus as aforesaid; that defendant be cited to answer this petition and that on final hearing said injunction be made perpetual and that plaintiff have judgment for general relief and for costs of suit and for such other and further relief as he may be entitled."

■ Second. Appellants now suggest an additional proposition of fundamental error on the theory that appellee did not plead facts raising the issue that the construction of the fence would constitute a dangerous condition for his child and for the other children similarly situated. On this issue appellee pleaded as follows: "That said school campus is surrounded on the north, south, east and west by streets of the City of Nacogdoches, and that on all sides there are many homes from which children go to said school campus, and that as it is now, the automobile traffic is fast and furious over and along said streets; and that as it now is, the plaintiff's child with others can reach the school campus and go to the buildings from any direction and without being forced to travel down said

streets distances of from 100 to 200 feet before having an entrance to said campus; that there are with the plaintiff's child hundreds and hundreds of children that attend said schools on said campus and that for the protection of the plaintiff's child and those that attend with him said schools it is for the plaintiff's child's safety as well as others that they be given the opportunity to enter on said campus as quickly as possible and avoid the chances of coming in contact with the rapid transit of modern day traffic on all the streets of Nacogdoches."

This paragraph is followed by allegations describing the fence and the plans and specifications under which it was to be built. In this connection it was alleged that "the circuit of said school campus" was 4,200 feet, that only seven gates were to be built in the fence. The petition also contained the following additional allegations of danger to the school children: "That if said fence be built there is now left a space between where the fence would be built and the street outside of said fence six or eight feet in width and that the plaintiff's child with those coming from the northwest to enter said campus if fence were built would be caused to walk down Fredonia Street a distance of 600 feet or down Hughes Avenue 450 feet before entrance could be had to said campus for any purposes; those coming from the northeast to the school would be compelled to travel Hughes Avenue 450 feet or down Mound Street 600 feet to the entrance to said campus; those coming from the southeast would be compelled to travel along Mound Street for a distance of 600 feet to the entrance or down Arnold Street 450 feet to said entrances; that Hughes, Mound, Arnold, and North Fredonia are prominent Streets in the City of Nacogdoches and are traveled by thousands and thousands of automobiles during twelve months, and that the attendance for the Nacogdoches Public Schools and especially that attendance of the central, grammar, and high schools is believed by the plaintiff to be from 1200 to 1500 pupils, one of which is the child of the plaintiff; and that this number will attend said school during the year 1930 and 1931. * * * That the fence would congregate, force down the streets as aforesaid the plaintiff's child with others along the streets hemmed in by said fence for the distance as aforesaid, and a probability of the gate's being locked and the children's being congregated on the congested streets as aforesaid; that the children, when released from school at noon and in the afternoon, would be forced to make exit from said campus in the several openings as aforesaid and will imperil and endanger the life of plaintiff's child with others in that emerging from the gates the plaintiff's child is within 6 or 8 feet

of the highly congested streets as aforesaid and makes the same dangerous to the plaintiff's child and others with him, thereby endangering and keeping in fear plaintiff and his wife of the danger of plaintiff's child's being run over and killed in the congested streets as aforesaid." It was further alleged that without the fence the conditions complained of do not exist. These allegations were sufficient to raise the issue submitted to the jury by question No. 2, as given in the original opinion.

Third. Appellants erroneously insist that to create a dangerous condition appellee should have alleged: "That the trustees were building a 'pitfall' in which students might fall and kill themselves in going to and returning from school, or while at school, or that the proposed fence possessed daggers or spears that might kill some of the students that might come in contact with it, or because of its peculiar attractiveness it would specially attract the students to it in such a way as to seriously injure their bodies or minds or that in some other way the fence would injure health or life or limb."

Fourth. Answering appellants' proposition that the judgment is fundamentally erroneous because we have filed no findings of fact in support thereof, we adopt question No. 2 and the jury's answer thereto as our conclusion of fact on the issue now under discussion. As this finding has not been attacked by a proposition that we can consider, it is binding both upon us and upon appellants.

Being in doubt as to the extent of our holding, appellants say that the opinion "ought to be clear enough so that litigants may finally dispose of it at second trial." Complying with this request, it is our conclusion that the only issue pleaded by appellee sufficient in law to sustain a permanent injunction against the building of the fence was, to quote from the jury's verdict, that it would "make it more dangerous for the plaintiff's child in attending school." All other issues pleaded by appellee in the petition now before us were subject to appellants' general demurrer. Thus, that the building of the fence would damage appellee's property and detract from the value of the Old Stone Fort as a historic relic, and that the trustees were without authority to expend the school funds for the purpose of erecting the fence, did not constitute a cause of action. As against these allegations the building of the fence was not an unlawful exercise of the discretion vested by law in the board of trustees in managing the schools of Nacogdoches independent school district.

The motion for rehearing is overruled.